**FEDERAL PUBLIC DEFENDER**
MIDDLE DISTRICT OF PENNSYLVANIA
100 CHESTNUT STREET, SUITE 306
HARRISBURG, PENNSYLVANIA 17101-2540
TELEPHONE: (717) 782-2237
FAX: (717) 782-3881

**FEDERAL PUBLIC DEFENDER**
JAMES V. WADE

**ASSISTANT FEDERAL DEFENDERS**
LORI J. ULRICH
THOMAS A. THORNTON
RONALD A. KRAUSS

May 22, 2007

Supreme Court of the United States
Office of the Clerk
One First Street, NE
Washington, DC 20543

**RE:** ***United States v. Sean Grier***

Dear Madam or Sir:

Enclosed please find an original and ten copies of a Motion for Leave to Proceed *In Forma Pauperis*, a Petition for a Writ of Certiorari to the United States Court of Appeals for the Third Circuit, with attached Appendices, and a Certificate of Service. Please file accordingly.

Thank you for your attention and consideration in this matter.

Sincerely,

RONALD A. KRAUSS, ESQ.
Asst. Federal Public Defender– Appeals

RAK/saj
Enclosures
cc: Paul Clement, Esq. (w/enclosure)
Theodore B. Smith, III, Esq. (w/enclosure)
Marcia M. Waldron, Clerk
Sean Grier (w/enclosure)

NO.__________

IN THE

# SUPREME COURT OF THE UNITED STATES

*OCTOBER TERM, 2006*

SEAN GRIER,
*Petitioner,*

v.

UNITED STATES OF AMERICA
*Respondent.*

## MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Pursuant to Rule 39 of the Rules of the Supreme Court of the United States, petitioner Sean Grier asks leave to file the enclosed Petition for Writ of Certiorari to the United States Court of Appeals for the Third Circuit without prepayment of costs and to proceed *in forma pauperis* pursuant to an appointment under the Criminal Justice Act, 18 U.S.C. *3006A(d)(6). Pursuant to the Criminal Justice Act, the Federal Public Defender's Office

was appointed to represent the petitioner in the United States District Court for the Middle District of Pennsylvania and in the United States Court of Appeals for the Third Circuit. Leave to proceed *in forma pauperis* has not been sought in any other court.

Respectfully submitted,

JAMES V. WADE, ESQ.
Federal Public Defender

____________________________________
RONALD A. KRAUSS, ESQ.
*Counsel of record*
Asst. Federal Public Defender–Appeals
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
(717) 782-2237
PA Attorney ID # 47938
*Counsel for Petitioner,*
*Sean Grier*

Date: May 22, 2007

NO.__________

IN THE

# SUPREME COURT OF THE UNITED STATES

*OCTOBER TERM, 2006*

SEAN GRIER,
*Petitioner,*

v.

UNITED STATES OF AMERICA,
*Respondent.*

**On Petition for Writ of Certiorari to the United States Court of Appeals for the Third Circuit**

## PETITION FOR WRIT OF CERTIORARI

JAMES V. WADE, ESQ.
Federal Public Defender
Middle District of Pennsylvania

RONALD A. KRAUSS, ESQ.
*Counsel of record*
Asst. Federal Public Defender–Appeals
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
717-782-2237

*Counsel for Petitioner,*
*Sean Grier*

## QUESTION PRESENTED

This case challenges Fifth Amendment law in the federal courts of appeals, which denies convicted defendants at sentencing the constitutional right to require that other alleged crimes that constitute sentence enhancements be proved beyond reasonable doubt, depriving them of liberty without the due process guaranteed to all citizens accused of crimes.

In 2005, following Sean Grier's guilty plea to the crime of felon in possession of a firearm, the District Court held a sentencing hearing to decide, in calculating Grier's advisory Guidelines sentence, whether to apply a sentence enhancement based on the Government's allegation that Grier had committed a felony, the Pennsylvania state crime of aggravated assault. At that hearing, the District Court used the civil standard of proof – preponderance of the evidence – in deciding disputed facts to find Grier guilty of the crime of aggravated assault. Based on that civilly determined finding of criminal guilt, the District Court increased Grier's Guidelines sentencing exposure from 84-105 months to 100-120 months, and ultimately imposed a prison term at the bottom of the enhanced range, 100 months.

This case presents the following question:

1. Does the Due Process Clause, which protects accused defendants at trial by requiring – for every fact necessary to establish guilt of the offense charged – proof beyond a reasonable doubt, similarly protect convicted defendants at sentencing, by requiring – for every fact necessary to establish guilt of a separate offense that constitutes a Guidelines enhancement – proof beyond a reasonable doubt?

# TABLE OF CONTENTS


Question Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Opinion Below. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Constitutional Provision Involved. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. The altercation giving rise to the factual dispute. . . . . . . . . . . . . . . . . . . . . . . . 3

B. The sentencing: Increasing Grier's sentence after finding him guilty of the state crime of aggravated assault, by the civil standard of proof – preponderance of the evidence. . . . . . . . . . . . . . . . . . . . . . 5

C. Grier's appeal in the Third Circuit Court of Appeals.. . . . . . . . . . . . . . . . . . . . 7
1. The Third Circuit's original Panel decision. . . . . . . . . . . . . . . . . . . . . 7
2. The Third Circuit's *en banc* decision. . . . . . . . . . . . . . . . . . . . . . . . . 9
a. The Majority opinion. . . . . . . . . . . . . . . . . . . . . . . . 10
b. Judge Rendell's concurrence. . . . . . . . . . . . . . . . . . . 12
c. Judge Ambro's concurrence. . . . . . . . . . . . . . . . . . . . 12
d. Judge Sloviter's dissent.. . . . . . . . . . . . . . . . . . . . . . 14
e. Judge McKee's dissent. . . . . . . . . . . . . . . . . . . . . . . 18

Reasons for Granting the Writ. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

I. This Court should grant certiorari because the nationwide denial of due process rights for convicted federal defendants in the sentencing process is an issue of extraordinary importance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

A. Due Process requires that when a convicted defendant's sentence will be increased by a judicial finding that the defendant committed another crime, the elements of that crime must be found beyond a reasonable doubt. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B. Contrary to the *Grier* Majority, the *Booker* remedial opinion did not make the U.S. Code sentence the *Apprendi-Blakely* statutory maximum. . . . . 29

C. Under the Doctrine of Constitutional Avoidance, this Court can construe the Federal Sentencing Statutes to require use of the beyond-a-reasonable-doubt standard to prove sentence enhancements that constitute a separate offense. . . . . 33

Conclusion. . . . . 37

Certificate of Bar Membership

Certificate of Service

**CONTENTS OF APPENDIX**:

*United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (*en banc*). . . . . 1a

Judgment*, United States v. Grier*,
No. 05-1698 (3d Cir., February 5, 2007). . . . . 69a

Letter, Clerk, U.S. Supreme Court (granting three-week filing extension),
April 26, 2007. . . . . 71a

# TABLE OF AUTHORITIES

## CASES

*Apodaca v. Oregon*,
406 U.S. 404 (1972) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29

*Apprendi v. New Jersey*,
530 U.S. 466 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Blakely v. Washington*,
542 U.S. 296 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Claiborne v. United States*,
127 S. Ct. 551(*cert. granted*, Nov. 3, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Clark v. Martinez*,
543 U.S. 371(2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 35

*Crowell v. Benson*,
285 U.S. 22 (1932). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Cunningham v. California*,
127 S. Ct. 856 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Gardner v. Florida*,
430 U.S. 349 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*Hankerson v. North Carolina*,
421 U.S. 68 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Harris v. United States*,
536 U.S. 454 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20

*Hooper v. California*,
155 U.S. 648 (1895). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Ivan v. City of New York*,
407 U.S. 203 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*I.N.S. v. St. Cyr*,
533 U.S. 289 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-36

*In re Winship*,
397 U.S. 358 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*McMillan v. Pennsylvania*,
477 U.S. 79 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Mempa v. Rhay*,
389 U.S. 128 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Mistretta v. United States*,
488 U.S. 361(1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Mullaney v. Wilber*,
432 U.S. 233 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Ring v. Arizona*,
536 U.S. 584 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 29

*Rita v. United States*,
127 S. Ct. 551 (*cert. granted*, Nov. 3, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Schriro v. Summerlin*,
542 U.S. 348 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Speiser v. Randall*,
357 U.S. 513 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25, 28

*Sullivan v. Louisiana*,
508 U.S. 275 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Booker*,
543 U.S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Grier*,
475 F.3d 556 (3d Cir. 2007) (*en banc*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Gunter*,
462 F.3d 237(3d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Hughes*,
401 F.3d 540 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Jackson*,
2007 U.S. App. LEXIS 2750 (4th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Jones*,
526 U.S. 227 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Kikumura*,
918 F.2d 1084 (3d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*United States v. Mares*,
402 F.3d 511 (5th Cir.),
*cert. denied*, 126 S. Ct. 43 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. McDowell*,
888 F.2d 285 (3d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Perez*,
2007 U.S. App. LEXIS 7318 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Watts*,
519 U.S. 148 (1997) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Williams v. Florida*,
399 U.S. 78 (1972) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Yates v. Aiken*,
484 U.S. 211(1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Zadvydas v. Davis*,
533 U.S. 678 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33-34

## CONSTITUTION, STATUTES, RULES & GUIDELINES


U.S. CONST., amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. CONST., amend. VI.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

18 U.S.C. § 924(a)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 924(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. §3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 12

28 U.S.C. § 1254(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 Pa. C.S. § 1104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 Pa. C.S. § 2701(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 Pa. C.S. § 2702(a)(4).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Sup. Ct. R. 10(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S.S.G. § 2K1.3 (application note 2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S.S.G. § 2K2.1(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S.S.G. § 2K2.1(b)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

U.S.S.G. § 5K2.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

U.S.S.G. § 6A1.3 (commentary). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34


## OTHER MATERIALS


Nancy Gertner, "What Yogi Berra Teaches About Post-Booker Sentencing,"
*The Pocket Part of Yale Law Journal*
(http://www.yalelawjournal.org/archive.asp (July 3, 2006)). . . . . . . . . . . . . . . . . . . . 31-32

**NO._________**

IN THE
SUPREME COURT OF THE UNITED STATES

*OCTOBER TERM, 2006*

SEAN GRIER,
*Petitioner,*
v.

UNITED STATES OF AMERICA
*Respondent.*

**PETITION FOR WRIT OF CERTIORARI**
**TO THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

Petitioner, Sean Grier, by his attorney Ronald A. Krauss, Esq., Assistant Federal Public Defender–Appeals, in the Office of the Federal Public Defender for the Middle District of Pennsylvania, respectfully petitions for a writ of certiorari to review the judgment entered in this case by the United States Court of Appeals for the Third Circuit.

## OPINION BELOW

The opinion of the United States Court of Appeals for the Third Circuit, *en banc*, affirming the order of the United States District Court for the Middle District of Pennsylvania, is reported at 475 F.3d 556 (3d Cir. 2007). It is included in the Appendix, along with the judgment.

## JURISDICTION

On February 5, 2007, the Third Circuit Court of Appeals issued its en banc opinion, and entered its Judgment affirming the District Court's order. The jurisdiction of the Supreme Court is invoked under 28 U.S.C. § 1254(1).

## CONSTITUTIONAL PROVISION INVOLVED

The Fifth Amendment to the Unites States Constitution provides, in relevant: "No person shall be held to answer for a . . . crime, unless on a presentment or indictment of a Grand Jury . . . nor [shall] be deprived of life, liberty, or property, without due process of law."

## STATEMENT OF THE CASE

This case questions the constitutionality of a critical federal sentencing practice – sanctioned by every federal court of appeals – that affects thousands of defendants in the federal system: to calculate Guidelines sentences, judges find facts using the civil standard of proof, preponderance of the evidence, in deciding the propriety of sentence enhancements that constitute new and separate criminal offenses, not the criminal standard of proof beyond a reasonable doubt.

### A. The altercation giving rise to the factual dispute

The constitutional standard-of-proof issue in this case arises out of an altercation that occurred on July 15, 2003, in Harrisburg, Pennsylvania. Petitioner Sean Grier was at the home of his girlfriend, Norma Navarro, when Ms. Navarro's brother, Juan Navarro, angrily accosted him. Navarro was angry because his sister had taken his bicycle, telling him that she did not intend to return it until Navarro paid her money owed for her cable bill. Navarro confronted Grier, demanded to know where the bicycle was, and insisted that Grier return it to him. Grier refused, telling him that his sister had the bike, and that she would give it back to him when he paid the money he owed her. Navarro then threatened Grier, promising that "there's gonna be some problems if I don't have my bike back." Grier refused again, and said, "Let the problem be right here and now." (App. 2a)

Navarro made good on his threat: Navarro "swung first," throwing a punch. A scuffle ensued. Both men fell to the ground, and "started rolling around on the ground," in the middle of a growing crowd of bystanders. (App. 48a.) Navarro testified that while wrestling

on the ground, he did not see a gun, but he heard bystanders say that Grier had a gun:

> I don't know if the gun fell out [of Grier's pockets] or whatever. People was telling me that he was taking the gun out and they tried to get the gun from him and all. . . . And then a shot fired. Then we just separated. (App. 48a.)

The record includes no evidence about the specific circumstances of that gun discharge, including who had control of the gun at any time during the scuffle: before it was discharged, when it discharged, or after it discharged. Nor does the record establish where the gun was pointing when it fired, or where the bullet went.

After the gunshot, the scufflers separated. By then, Grier had the gun. Navarro – demonstrably unafraid of bodily injury even though the gun in Grier's hand was now pointing at him – tried to accost Grier again. (App. 48a.) But as Navarro lunged towards Grier, bystanders intervened and held Navarro back. As Navarro related:

> Then we just separated. And then after that, he just pointed the gun at me, and then . . . I started, I kept going after him. And the people was just holding me back. (App. 48a.)

\Grier stood his ground; he did not advance towards Navarro. No evidence suggests that Grier intended to continue the fight, or that anyone restrained Grier from continuing the fight.

Then, with Navarro being restrained by the bystanders, Grier pointed the gun skyward, fired, and walked away. Navarro testified that he understood Grier's shooting into the sky and walking away to mean "let's end this," to signify that the fight was over. Grier ultimately discarded the gun in a nearby trash can. (App. 48a.)

The police found the gun Grier had discarded, and determined it was stolen. Grier admitted the gun was his. Pennsylvania State Police arrested Grier for various charges,

including the felony of aggravated assault. But the State dismissed those charges just one month later, on August 25, 2003. (App. 2a.)

In October 2003, a Federal Grand Jury returned a two count Indictment against Grier. Count I charged that he violated 18 U.S.C. § 922(g)(1), possession of a firearm by a felon. Count II charged knowing possession of a stolen firearm, in violation of 18 U.S.C. § 924(c). (App. a.) In January 2004, Grier, pursuant to a plea agreement, pleaded guilty to Count I, and the Government agreed to dismiss Count II. (App. 2a.)

### B. The Sentencing: Increasing Grier's sentence after finding him guilty of the state crime of aggravated assault, by the civil standard of proof – preponderance of the evidence

The Probation Office prepared a Presentence Report calculating Grier's advisory Guidelines sentence. Under the Guidelines, the base offense level for a violation of § 922(g)(1) was 24; two levels were added because the gun was stolen (U.S.S.G. § 2K2.1(b)(4)), and three levels were subtracted for acceptance of responsibility and assistance to authorities, for an offense level of 23. With a criminal history category V, the initial Guideline range was 84-105 months. (App. 2a.)

The Probation Office also recommended enhancing the base offense level by four levels, under U.S.S.G. § 2K2.1(b)(5), because Grier's possession was allegedly "in connection with another felony offense". The Probation Office had concluded that Grier's scuffle with Navarro was an "attempt to cause bodily injury to another with a deadly weapon," the felony of aggravated assault under Pennsylvania law. *See* 18 Pa. C.S. § 2702(a)(4). So based on that recommended enhanced total offense level of 27, and a criminal

history category of V, the Probation Office calculated an enhanced Guideline imprisonment range of 120-150 months. But because the offense to which Grier pleaded guilty has a 10-year maximum, *see* 18 U.S.C. § 924(a)(2), the Probation Office ultimately recommended the maximum 120 months – exposing Grier to a prison term 15 months longer than the top of the Guideline range without the enhancement. (App. 2a.)

Grier asserted several objections to the PSR, including the objection that application of U.S.S.G. § 2K2.1(b)(5) to add a four-level enhancement was improper because there was insufficient evidence to support a finding that he committed the state felony of aggravated assault. Grier argued, first, that he acted in self-defense, which under Pennsylvania law is a complete defense to aggravated assault. Second, Grier argued that the facts did not support a charge more serious than "simple assault by mutual scuffle," which is a third-degree misdemeanor (*see* 18 Pa. C.S. § 2701(b)(1))[1], punishable by only one year of prison (*see* 18 Pa. C.S. § 1104) – and thus not a "felony" for the purpose of a § 2K2.1(b)(5) four-level enhancement: a felony is a crime with a term of imprisonment that exceeds one year. U.S.S.G. § 2K1.3 (application note 2). (App. 3a.)

In addition, and most critical here, Grier argued that the Due Process Clause required

---

[1] A person commits a simple assault under Pennsylvania law if he:
(a) (1) attempts to cause . . . bodily injury to another;
(3) attempts by physical menace to put another in fear of imminent serious bodily injury . . . .
(b) Simple assault is a misdemeanor of the second degree ***unless committed . . . in a fight or scuffle entered into by mutual consent, in which case it is a misdemeanor of the third degree . . . .***
18 Pa. C.S. § 2701(emphasis added).

that any factual findings that would be the basis for determining that he committed the state crime of aggravated assault must be based on the criminal proof standard of beyond a reasonable doubt, not the civil proof standard of preponderance of the evidence. (App. 3a.)

Overruling Grier's objections, the District Court adopted the Presentence Report. The District Court found that Grier did commit the felony of aggravated assault under Pennsylvania law, and that he did not act in self-defense – findings that the District Court explicitly based on the civil standard of proof, preponderance of the evidence. (App. a.) But the District Court also found that Navarro was "partly responsible" for the altercation. Accordingly, the District Court reduced the four-level enhancement by half, so that the final Guidelines calculation resulted in a range of 100-120 months. The District Court imposed a sentence at the bottom of the Guidelines range, 100 months – 16 months longer than the bottom of the initial non-enhanced Guidelines range. (App. 4a.)

### C. Grier's appeal in the Third Circuit Court of Appeals

#### *1. The Third Circuit's original Panel decision*

Grier timely appealed to the Third Circuit, raising two main arguments: 1) that the District Court erred in enhancing his sentence based on finding that he committed the state crime of aggravated assault, using the civil standard of proof; and 2) that the District Court imposed sentence without properly articulating consideration of the §3553(a) sentencing factors. At oral argument, Grier narrowed the scope of his argument to focus specifically on a due process burden-of-proof issue that the Third Circuit had left open 16 years earlier in

*United States v. McDowell* (3d Cir. 1989)(Rosenn, J.)[2]. In what was then a question of first impression, the *McDowell* Court determined that when a sentencing court was considering a sentence enhancement, the proper burden of proof was, in general, the civil preponderance-of-the-evidence standard. To reach that conclusion, the court necessarily considered defendant's due process rights, and in doing so, recognized a potential due process issue that, though not specifically presented in *McDowell*, merited noting to reserve decision for another day:

> We explicitly do not address the burden of proof in cases where a sentencing adjustment constitutes more than a simple enhancement but ***a new and separate offense***.

*Id.*(emphasis added).[3] Accordingly, Grier argued that because the sentencing enhancement for committing the state crime of aggravated assault constituted a finding that Grier was guilty of a "new and separate offense," the burden of proof issue reserved in *McDowell* was ripe for decision, and due process required the court to hold that the beyond-a-reasonable-doubt standard applied.

Before the Third Circuit Panel reached a decision, one Panel member, Circuit Judge Max Rosenn, died. The Panel quorum was reconstituted to include Chief Judge Scirica. On June 6, 2006, a divided Panel issued an opinion that affirmed the District Court's legal

[2] 888 F.2d 285.

[3] 888 F.2d at 291. Identification of a "separate offense" as a constitutionally significant characteristic of a sentence enhancement – *i.e.*, a characteristic that would trigger due process rights – was identified by this Court three years earlier in *McMillan v. Pennsylvania*, 477 U.S. 79, 87-88 (1986).

conclusions and factual findings, but remanded for resentencing, directing the District Court to fully explain its sentencing decision on the record, specifically by reference to the factors of 18 U.S.C. § 3553(a). The Panel majority also overruled a prior decision of another panel, *United States v. Kikumura* (3d Cir. 1990)(Becker, J.)[4], which held that where "the magnitude of a contemplated [sentencing] departure is sufficiently great that the sentencing hearing can fairly be characterized as a tail which wags the dog of the substantive offense," the facts justifying the departure must be found by clear and convincing evidence. *Id*.[5] Judge Sloviter dissented on the burden of proof issue.

Grier filed a Petition for Rehearing *En Banc*. On July 19, 2006, the Third Circuit granted Grier's Petition, vacating the Panel's judgment and opinion. (App. a.) Oral argument *en banc* was held on September 13, 2006.[6]

### 2. *The Third Circuit's* **En Banc** *decision*

On February 5, 2007, the Third Circuit issued its precedential decision, a nine-to-two

---

[4] 918 F.2d 1084.

[5] 918 F.2d at 1101-02 (internal quotations omitted). Because the defendant in *Kikumura* did not raise whether the beyond-a-reasonable-doubt standard of proof applied, the court did not address it. In a concurrence, Circuit Judge Rosenn expressed concern that defendants' due process rights were endangered by prosecutors who might choose to avoid proving the most serious charges against a defendant at trial, and then during sentencing use those charges – proved only by a preponderance of the evidence – to unfairly increase a defendant's sentence. *See id.* at 1119–21 (Rosenn, J., concurring).

[6] An *amicus* brief filed in support of Grier with the Third Circuit *en banc*, on behalf of the National Association of Federal Defenders and the National Association of Criminal Defense Lawyers, argued the broad proposition that the Due Process Clause required the Government to prove beyond a reasonable doubt ***any*** facts on which it relied in seeking to increase a defendant's sentence, not just those that constitute a separate criminal offense.

majority affirming the District Court. Along with the Majority opinion, there were four other separate opinions. (App. 1a-68a.) Each will be discussed in turn.

*a. The Majority opinion*

The Majority opinion held that the Due Process Clause does not reach a defendant during the sentencing process to require proof beyond a reasonable doubt of facts establishing sentence enhancements. After a proper conviction, "'the criminal defendant has been constitutionally deprived of his liberty to the extent the state may confine him,' in this case, the maximum allowed under Title 18 of the United States Code." (App. 6a, *quoting McMillan v. Pennsylvania* (U.S. 1986)[7].) And

> [o]nce an individual has been convicted . . . triggering a [U.S. Code] statutory maximum penalty, a court may impose any sentence on the individual up to that [U.S. Code] maximum . . . . [Therefore] [j]udicial factfinding in the course of selecting a sentence does not offend the Fifth and Sixth Amendment rights to a jury trial and proof beyond a reasonable doubt. (App. 6a.)

The Majority observed that although the Supreme Court majority opinions in *United States v. Booker* (U.S. 2005)[8] were silent on the Fifth Amendment and the standard of proof for sentence enhancements – as that case focused solely on Sixth Amendment rights (App. 9a) – nevertheless, the Supreme Court's "discussion in *Booker* regarding the Jury Trial Clause of the Sixth Amendment applies with equal force to the Due Process Clause of the Fifth Amendment." (App. 5a.) With *Booker*'s rendering the Guidelines advisory, the

---

[7] 477 U.S. 79, 92 n.8 (internal quotation omitted).

[8] 543 U.S. 220.

Majority reasoned, disputed facts in sentencing do not "have the effect of increasing the maximum punishment to which the defendant is exposed" because those facts do not "alter[] the judge's final sentencing authority" (App. 9a): "Facts relevant to enhancements under the Guidelines . . . no longer increase the maximum punishment to which the defendant is exposed, but . . . simply inform the judge's discretion as to the appropriate sentence." (App. 7a.) Therefore, the District Court properly found all facts relevant to sentencing under the civil standard of proof, preponderance of the evidence. (App. 12a.)[9]

The Majority gave short shrift to Grier's narrowed argument that the right to proof beyond a reasonable doubt should attach, in particular, to those sentence enhancements constituting a "separate offense," such as the four-level felony-offense enhancement under U.S.S.G. § 2K2.1(b)(5). The Majority dismissed it as a "novel" concept (App 10a) "that appears nowhere in Supreme Court jurisprudence . . . ." (App. 11a.)

And in the course of its decision, the Majority distinguished two Supreme Court cases as wholly inapposite: *United States v. Jones* (U.S. 1999)[10], because it is simply a "statutory interpretation case . . . . not a statement of constitutional doctrine" (App. 10a); and, in a footnote, *United States v. Cunningham* (U.S. 2007)[11], because the Majority read it as limited to a Sixth Amendment challenge to a mandatory sentencing scheme. (App. 9a at n.6.)

---

[9] The Majority also concluded that because this case did not present the *Kikumura* "tail which wags the dog of the substantive offense" factual scenario, the court need not address the viability of that decision. The Government had conceded that point in its brief.

[10] 526 U.S. 227.

[11] 127 S. Ct. 856.

In sum, the Majority concluded, the advisory Guidelines scheme that *Booker* implemented dictates that:

> district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error. The only change in the equation is that, at the end of the day, the district court is not bound by the recommended Guidelines range, but must impose a sentence based on all the factors articulated in [18 U.S.C.] § 3553(a). The court of appeals must then decide whether that final sentence is reasonable. (App. 4a.)

Finally, although affirming the District Court's ruling on the burden of proof issue, the court held that the record was too sparse to permit review of the aggravated assault determination, in particular, and in general, it was not sufficiently developed to permit a ruling as to whether the record "as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." (App. 15a.) Accordingly, the Majority vacated the judgment, and remanded for further explication of the record. (App.  a.)

*b. Judge Rendell's concurrence*

Circuit Judge Rendell concurred in the judgment, writing separately to add that due process concerns did not apply in this case because Grier's sentence was below the 120-month U.S. Code maximum for violating 18 U.S.C. § 922(g)(1). Judge Rendell noted, however, that due process concerns could be implicated if a defendant's sentence were "in fact based predominantly on conduct wholly collateral to his convicted crime." (App. 17a.)

*c. Judge Ambro's concurrence*

While Circuit Judge Ambro also concurred in the judgment, he did so only because he concluded that Supreme Court precedent dictated that result, citing *McMillan*, *United*

*States v. Watts* (U.S. 1997)[12], and *Harris v. United States* (U.S. 2002)[13].

Judge Ambro rejected the Majority's reasoning "because, among other things, I do not agree with its suggestion that the Due Process Clause has no force in criminal sentencing." (App. 19a.) Observing that "Sean Grier is in prison in part for a crime for which he was never indicted, never tried, and never convicted" (App. 17a-18a), Judge Ambro asserted that basing Grier's sentence on a judicial finding that he committed the state crime of aggravated assault by using the civil standard of proof violated due process: permitting such sentence enhancement "criminalizes activity 'on the cheap'":

> Despite *Apprendi* and its progeny, we continue to allow sentencing judges, once a jury has found beyond a reasonable doubt that a defendant has committed one crime, then to find him guilty by a preponderance of the evidence of other crimes for which he was not tried – or worse, tried and acquitted – and to sentence him as if he had been convicted of them as well. In effect, we have a shadow criminal code under which, for certain suspected offenses, a defendant receives few of the trial protections mandated by the Constitution. (App. 19a.)

Judge Ambro also took issue with the Majority's dismissal of the separate offense concept as lacking precedent, noting that the Supreme Court in *Blakely v. Washington* (U.S. 2004)[14] addressed that very issue when the Court "expressed concern over Government manipulation of the criminal justice system by circumventing the procedural protections of trial in order to achieve an identical result at sentencing." (App. 28a, citing *Blakely* ("Another

---

[12] 519 U.S. 148.

[13] 536 U.S. 454.

[14] 542 U.S. 296.

example of conversion from separate crime to separate enhancement . . . is the obstruction-of-justice enhancement. Why perjury during trial should be grounds for a judicial sentence enhancement on the underlying offense, rather than an entirely ***separate offense*** to be found by a jury beyond a reasonable doubt . . . is unclear")[15].)

Judge Ambro concluded that the dissents of Judge Sloviter and Judge McKee "may be proven correct. I hope that day will come" (App. 33a) . . . "[because the Constitution requires that] sentencing enhancements that themselves constitute separate crimes [should] be proven beyond a reasonable doubt." (App. 27a.)

*d. Judge Sloviter's dissent*

Circuit Judge Sloviter, joined by Circuit Judge McKee, dissented, writing that the Majority opinion "abrogates one of the most important, if not the most important, of the rights that the Constitution affords criminal defendants: the right to be found guilty only by a finding beyond a reasonable doubt." And the Majority did so based on an overly expansive interpretation of language in *Booker* that "is simply astonishing," as *Booker* did not even address Fifth Amendment issues, but rather "was directed [solely] to the protection of a defendant's Sixth Amendment right to a jury determination." (App. 35a.)

Noting the Supreme Court's characterization of Fifth Amendment challenges in *Apprendi v. New Jersey* (U.S. 2000) [16] as involving "a constitutional protection of 'surpassing

---

[15] 542 U.S. at 307 n.11 (emphasis added).

[16] 530 U.S. 466.

importance'" (App. 35a, quoting *Apprendi*[17]), Judge Sloviter examined the history and rationale of the due process entitlement to proof beyond a reasonable doubt, finding more than 30 years of precedent to support the view that it should apply to sentence enhancements that constitute a "separate offense", discussing cases that included:

- *In re Winship* (U.S. 1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.")[18];

- *Jones* (interpreting criminal statute to require due process protections for offense-defining elements to avoid unconstitutionality – "[facts] that increase the prescribed range of penalties to which a criminal defendant is exposed . . . must be established by proof beyond a reasonable doubt.")[19];

- *Apprendi* ("*Winship*'s due process and associated jury protections extend, to some degree, to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence"[20]; and "facts that increase the prescribed range of penalties to which a criminal defendant is exposed . . . . must be established by proof beyond a reasonable doubt"[21]);

- *Blakely* ("'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by defendant*"[22]);

- *Booker* ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact – no matter how the State labels it – must

[17] 530 U.S. 466 at 476.

[18] 397 U.S. 358, 364.

[19] 526 U.S. 227 at 252-53.

[20] 530 U.S. 466 (2000) at 484 (internal quotation omitted).

[21] 530 U.S. at 490 (*quoting Jones*, 526 U.S. at 252-53 (Stevens, J. concurring)).

[22] 542 U.S. 296, 303 (emphasis in original)

be found by a jury beyond a reasonable doubt."[23]);

- *Cunningham v. California* ("any fact that exposes a defendant to a greater potential sentence must be . . . established beyond a reasonable doubt, not merely by a preponderance of the evidence;"[24] and "*Booker*'s remedy for the Federal Guidelines . . . is not a recipe for rendering our Sixth Amendment case law toothless."[25]) (App. 35a-37a.)

Judge Sloviter took particular issue with the Majority's dismissive treatment of *Jones* as inapposite statutory interpretation. In *Jones*, a defendant was convicted under a federal car jacking statute that specified a sentence of up to 15 years, but also included a separate subsection – which Jones had not been charged with or found guilty of – permitting a sentence of 25 years if serious bodily injury resulted. During sentencing, the judge found by a preponderance of the evidence that serious bodily injury resulted, and increased Jones's sentence to 25 years. Judge Sloviter pointed out that, although the Supreme Court may have resorted to statutory interpretation to resolve *Jones*, it did so only to avoid what the Court identified as "the grave and doubtful constitutional issue presented" by the car jacking statute.[26] Justice Souter's opinion recognized the statute's underlying due process flaw, doubting "whether the specification of fact sufficient to increase a penalty range . . . was meant [by Congress] to carry none of the process safeguards that elements of an offense

---

[23] *Booker*, 543 U.S. 220 at 231 (*quoting Ring v. Arizona*, 536 U.S. 584, 602 (2002)).

[24] 127 S. Ct. 856, 863-64 (2007)

[25] 127 S. Ct. at 870.

[26] 526 U.S. at 239.

bring with them for a defendant's benefit."[27] Thus, the Court interpreted the statute to require reversal of the trial court's sentence enhancement based on conduct found by a preponderance of the evidence, because due process required that any fact "that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."[28] And as Judge Sloviter noted, the constitutional doubt behind the statutory interpretation in *Jones* became the constitutional rule in *Apprendi*. (App. 42a; *see Cunningham* ("In *Jones* . . . we examined the Sixth Amendment's historical and doctrinal foundations, and recognized that judicial factfinding operating to increase a defendant's otherwise maximum punishment posed a grave constitutional question . . . While the Court construed the statute at issue to avoid the question, the *Jones* opinion presaged our decision some 15 months later, in *Apprendi* . . . .)[29].)

Judge Sloviter also refuted the Majority's reliance on *Booker* in ruling that the *Apprendi/Blakely* bright-line statutory maximum must be the U.S. Code statutory maximum, observing that "[n]either of the *Booker* opinions ever says or suggests such a proposition." (App. 39a.) Judge Sloviter pointed to Justice Ginsburg's reprise in *Cunningham* of the Court's reasoning in *Blakely*, where, because the trial judge

> could not have sentenced Blakely above the standard range without finding the additional fact of deliberate cruelty, [c]onsequently, that fact was subject to [the *Apprendi-Blakely* bright-line statutory maximum] . . . . [and therefore] it

[27] 526 U.S. at 233.

[28] 526 U.S. at 243 n.6.

[29] 127 S. Ct. 856, 864.

> did not matter . . . that Blakely's sentence, though outside the standard range, was within the 10-year maximum for class B felonies.

(App. 44a-45a, quoting *Cunningham*[30].) Similarly, Judge Sloviter wrote, even though Grier's sentence is within the 120-month U.S. Code maximum, it violates the *Apprendi-Blakely* bright-line maximum because Grier's sentence was calculated and imposed based on the judge's factual findings by a preponderance of the evidence, which elevated Grier's sentencing range above the Guidelines range that the judge would have imposed without such findings.

#### *e. Judge McKee's dissent*

Circuit Judge McKee, joined by Judge Sloviter, also filed a dissent, asserting that a conviction "does not jettison all of the protections embodied in the Constitution . . . . [as] is evident from a long line of cases that predate *In re Winship* and extend to *Apprendi* and its progeny." (App. 65a.) These constitutional protections apply where "the sentence imposed includes punishment for an uncharged crime that has only been established by a preponderance of the evidence. . . ." (App. 52a, *citing Ring v. Arizona* (U.S. 2002)[31].)

In Judge McKee's view, the Majority failed to recognize that its holding "contradicts longstanding Fifth Amendment principles by ignoring the risk of erroneously setting the sentencing range too high based upon consideration of an uncharged ***crime*** during the sentencing process." (App. 60a) (emphasis in original). Unless that crime is admitted or

---

[30] 127 S. Ct. at 865.

[31] 536 U.S. 584, 602.

established by proof beyond a reasonable doubt, "the risk of error [in a factual determination] is constitutionally too high," as the defendant is being punished for committing a crime "the existence of which lacks the certainty required by the Fifth Amendment." (App. 60a.) Here, Judge McKee reasoned, the sentence that the District Court selected "punishes [Grier] for a crime the Commonwealth of Pennsylvania never saw fit to charge him with . . . . [and] that he was never convicted of." (App. 59a.) Grier's sentence violates the teaching in *Apprendi* that "the relevant inquiry is one not of form, but of effect – does the required finding . . . expose the defendant to a greater punishment than that authorized by [the guilty plea]?" (App. 60a, citing *Apprendi*[32].)

Judge McKee explained that contrary to the Majority's reading, *Apprendi* and *Blakely* instruct that the maximum punishment authorized by Grier's guilty plea was not the U.S. Code maximum, but rather, the maximum authorized by the unenhanced Guidelines calculation, subject to appellate reasonableness review. Although *Booker*, in theory, sought to free judges from mandatory Guidelines, in practice, the Guidelines' continued significance in federal sentencing implicates the holdings of *Apprendi* and *Blakely*. Judge McKee pointed out that the Third Circuit requires sentencing judges, as a first step, to calculate the Guidelines sentence, "and that calculation is the strong force that defines the starting point for all that follows. In doing so, it necessarily impacts – and often defines – the ending point." (App. 54.) Here, Judge McKee noted, the trial court's finding by a preponderance of

[32] 530 U.S. at 494.

the evidence that Grier committed the separate state crime of aggravated assault raised the Guidelines range from 84-105 months to 120-150 months, thus elevating the starting point for the judge to begin exercising discretion: "Nothing on this record even faintly suggests that Grier would have received as severe a sentence had he not been 'convicted' of an uncharged aggravated assault, the existence of which was only established by a preponderance of the evidence." (App. 56a.)

Finally, Judge McKee disagreed with the reliance on *McMillan* and *Harris* to support application of the civil proof standard, because the cases law embodies a constitutional distinction between sentencing based on conduct, and sentencing based on committing a defined criminal offense. In *McMillan* and *Harris*, the trial judges relied on conduct, "on traditional sentencing factors relevant to the defendant's character and the offense of conviction." (App. 58a.) But for Grier, as in *Apprendi*, the trial judge relied on a finding that Grier committed a state crime, and that "is very different – both in terms of the potential sentence, and in terms of the Fifth Amendment – than what sentencing courts traditionally have used to inform sentencing decisions." (App. 59a.)

## REASONS FOR GRANTING THE WRIT

### I. This Court should grant certiorari because the nationwide denial of due process rights for convicted federal defendants in the sentencing process is an issue of extraordinary importance

This Court should use this case to vindicate the Fifth Amendment due process rights of convicted federal defendants, to extend the beyond-a-reasonable-doubt standard of proof beyond trial, to sentencing: every fact necessary to establish sentence enhancements based on judicial findings that the defendant committed a separate criminal offense should be proved beyond a reasonable doubt. The Government should not be allowed to bring criminal charges through the back of the door of the sentencing phase that it can prove by a lesser, civil standard of proof.

Review is warranted where a federal "court of appeals . . . has decided an important federal question in a way that conflicts with relevant decisions of this Court. Sup. Ct. R. 10(c). The Third Circuit's decision and those of every other federal court of appeals in holding that the Fifth Amendment permits use of the preponderance of evidence standard to determine any Guidelines sentencing fact (App. 10a)[33] – depriving thousands of federal prisoners of liberty without due process – contradict both *Apprendi* and *Blakely*. This

[33] The Majority opinion cited decisions from all but the Fourth and Fifth Circuits; both appear to have reached the same conclusion. *See United States v. Jackson*, 2007 U.S. App. LEXIS 2750 (4th Cir. 2007) (*citing United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005)); *United States v. Perez*, 2007 U.S. App. LEXIS 7318 (5th Cir. 2007) (citing *United States v. Mares*, 402 F.3d 511, 519 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005).); *see also Cunningham*, 127 S. Ct. at 875 n.4 (Alito, J., dissenting) ("Every Court of Appeals to address the issue had held that a district court sentencing post-*Booker* may rely on facts found by the judge by a preponderance of the evidence.")

unanimity – echoing the courts of appeals' erroneous unanimity before *Apprendi* – argues in favor of granting review because, as the courts of appeals have hesitated in the past to vindicate Sixth Amendment claims, so now they have hesitated to vindicate this Fifth Amendment claim.

Only this Court can vindicate the Fifth Amendment due process rights of convicted federal defendants at sentencing that the courts of appeals have denied. This case will give the Court the opportunity to reaffirm the fairness and legitimacy of the criminal justice system by demonstrating the high value the Court places on each citizen's liberty, requiring that when convicted federal defendants face at sentencing a new and separate criminal offense that threatens increased loss of liberty, they are entitled to the full due process guaranteed to all citizens facing criminal charges.

### A. Due Process requires that when a convicted defendant's sentence will be increased by a judicial finding that the defendant committed another crime, the elements of that crime must be found beyond a reasonable doubt

The sentencing process affects the liberty interest of a defendant as much as the determination of guilt or innocence – particularly since most convictions are based on pleas. To safeguard defendants' due process rights, the Supreme Court has extended many rights guaranteed at trial to the sentencing process. Thus, in *Mempa v. Rhay* (U.S. 1967)[34], the Supreme Court held that due process required counsel at sentencing, and in *Gardner v.*

[34] 389 U.S. 128.

*Florida* (U.S. 1977)[35], the Court explicitly applied the Due Process Clause to sentencing for a capital offense, holding that a defendant has a constitutional right to challenge confidential portions of a presentencing investigation. Similarly, the Court should now hold that the Due Process Clause requires that the standard of proof for enhancement facts that increase a sentence – especially when, as here, that sentence enhancement constitutes a new and "separate offense" (and thus triggers due process protections as the Court identified in *McMillan*[36]) – is beyond a reasonable doubt.

The constitutional basis for the beyond-a-reasonable doubt standard was first articulated explicitly in *Winship*, which involved a juvenile delinquency proceeding where, as in federal criminal sentencing today, the judge was the factfinder, and the judge's findings did not literally result in the accused being "convicted" of a "crime." Although no specific constitutional language explicitly requires all findings of guilt under a beyond-a-reasonable-doubt standard, the Supreme Court held that the requirement is implicit in the Fifth Amendment: "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[37] The Court explained that:

> The reasonable doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error . . . . and it is indispensable to command the respect and

---

[35] 430 U.S. 349.

[36] 477 U.S. at 87-88.

[37] 397 U.S. at 364.

confidence of the community in applications of the criminal law.[38]

The reasonable doubt standard "instructs the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication,"[39] and, Justice Harlan wrote, is " bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free."[40]

Thus, in *Winship*, this Court endorsed the principle that a person's liberty and reputation are among the most basic of rights, and must be scrupulously protected: "The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction."[41] While in a civil suit for damages, the preponderance standard is acceptable because an error in plaintiff's favor is no more serious than in the defendant's favor, when "one party has at stake an interest of transcending value – as a criminal defendant his liberty – this margin of error is reduced as to him by the process of placing on the other party the burden . . . of persuading the fact-finder at the conclusion of the trial of his guilt beyond a reasonable doubt." *Speiser v. Randall* (U.S.

---

[38] 397 U.S. at 363, 364.

[39] 397 U.S. at 370.

[40] 397 U.S. at 372 (Harlan, J. concurring).

[41] 397 U.S. at 363.

1958).[42]

The values that the beyond-a-reasonable-doubt standard embodies are so fundamental that they should apply equally to all defendants who are facing unproven criminal charges – whether at trial or, in a sentencing hearing after conviction. Unproven criminal charges that subject a defendant to loss of liberty, even if camouflaged at sentencing hearings as sentence enhancements, require the same standard of proof beyond a reasonable doubt.

Such due process is required, in particular, when sentence enhancements constitute a new and separate offense. This Court identified separate offense enhancements as a specific trigger for due process protection in *McMillan*, where the Court upheld a Pennsylvania statute that provided for increasing the minimum sentence of certain crimes if visible possession of a gun during the crime could be proved to a judge by a preponderance of the evidence.[43] Most significant here is the Court's reason for finding that the statute did ***not*** trigger due process protections: because, among other things, it did ***not*** create "a separate offense calling for a separate penalty."[44] Thus, the Court was identifying a particular species of sentence enhancements that ***would*** trigger due process protections: sentence enhancements that could be characterized, in relation to the offense of conviction, as a "separate offense."

This concept of separate offense in *McMillan* seemed to be echoed in Justice

---

[42] 357 U.S. 513, 525-26.

[43] 477 U.S. at 90-91.

[44] 477 U.S. at 87-88.

Kennedy's dissent in *Cunningham*, which Justice Breyer joined, suggesting that *Apprendi*'s rule be applied to sentencing enhancements based on the nature of the offense. This would include applying *Apprendi*'s rule to such facts as whether "violence was employed," as opposed to applying *Apprendi* to sentencing enhancements involving factors exhibited by the defendant, such as cooperation or remorse. These nature of the offense enhancements could be matters for the jury (presumably to be determined beyond a reasonable doubt) because "these factors often are part of the statutory definition of an aggravated crime." *Cunningham*.[45]

Contrary to the *Grier* Majority and concurrences, and as the *Grier* dissenting opinions demonstrate, nothing in recent Supreme Court precedent has undermined the Court's past protection of Fifth Amendment due process rights. Although the Supreme Court's recent Sixth Amendment jurisprudence has focused more intently on the right to a jury, rather than on the companion Fifth Amendment due process right to the beyond-a-reasonable doubt standard, the recent *Cunningham* opinion pointed back to the independent Fifth Amendment right. Justice Ginsberg traced the history of the evolving jurisprudence to *Jones*, which includes a detailed review of *Winship* and the essential values embodied in that opinion. *Cunningham*.[46] Although not ultimately decided on constitutional grounds, *Jones's* reasoning is based in part on the Fifth Amendment right to proof beyond a reasonable doubt of facts

---

[45] 127 S. Ct. at 872-73. Of course, Justice Kennedy made clear that he continues to hold the view that as a general matter, "the *Apprendi* line of cases remains incorrect." *Id*. at 872.

[46] 127 S. Ct. at 864 (citing *Jones*, 526 U.S. at 240-43.)

that increase the statutory sentencing range.[47]

And in *Apprendi*[48], the Court reached the constitutional question left open in *Jones*, holding that a fact that increased the statutory maximum for assault – racial motivation – had to be proved in compliance with the Sixth Amendment. *Apprendi* expressly referred back to the due process roots of the reasonable doubt requirement: "Since *Winship*, we have made clear beyond peradventure that *Winship*'s due process and associated jury protections extend, to some degree, 'to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence.'" *Apprendi*, 530 U.S. at 484. *Blakely* then applied the *Apprendi* principles to determinate sentencing under a guidelines system, as did *Booker* to the Federal Sentencing Guidelines – both thus grounded in Fifth Amendment due process principles.

Finally, the reasoning of the *Grier* Majority and concurring opinions assumes that the level of constitutional protection for Fifth Amendment and Sixth Amendment rights is necessarily identical – that *Booker*'s remedy for Sixth Amendment problems necessarily cured any Fifth Amendment due process problems. (app. 7a-9a.) But this Court's precedent suggests otherwise: this Court has provided a higher level of protection to the Fifth Amendment beyond-a-reasonable doubt requirement – ***how*** disputed facts are determined – than to the Sixth Amendment requirement of ***who*** determines disputed facts.

---

[47] 526 U.S. at 243 n. 6.

[48] 530 U.S. 466.

The beyond-a-reasonable-doubt standard is of "transcending value" among the guarantees provided by the Constitution. *Winship*[49]. The right is so fundamental that any dilution of the standard constitutes reversible, structural error. *See Sullivan v. Louisiana* (U.S. 1993).[50] Further, unlike most procedural rights, this Court has found that the fundamental nature of the right requires that new rules of constitutional criminal procedure related to the beyond-a-reasonable-doubt standard be applied retroactively. *See Hankerson v. North Carolina* (U.S. 1977)(applying *Mullaney v. Wilber* (U.S. 1975)[51] retroactively)[52]; *Ivan v. City of New York* (U.S. 1972)(applying *Winship* retroactively)[53]. Even rules on presumptions that affect the reasonable doubt burden are applied retroactively. *See Yates v. Aiken* (U.S. 1988).[54]

In contrast, the Court has noted that precisely who engages in the fact-finding is not quite so critical: jury fact-finding is not necessary to ensure reliability for determinations of criminal guilty as long as that reliability is assured by the beyond-a-reasonable-doubt standard. Thus, the form of jury determinations can include non-unanimous verdicts, and verdicts by panels of fewer than twelve jurors. *See Apodaca v. Oregon* (U.S. 1972) (less than

---

[49] 397 U.S. at 372 (quoting *Speiser v. Randall*, 357 U.S. 513, 525-26 (1958)).

[50] 508 U.S. 275, 281-82.

[51] 421 U.S. 684.

[52] 432 U.S. 233, 240.

[53] 407 U.S. 203, 204-05.

[54] 484 U.S. 211, 216-17.

unanimous jury does not violate Constitution)[55]; *Williams v. Florida* (U.S. 1972) (Constitution does not require twelve person juries)[56]. And in *Schriro v. Summerlin* (U.S. 2004)[57], the Court held that, because the reasonable doubt standard was applied by the judge, the holding of *Ring v. Arizona* (U.S. 2002)[58], requiring jury determination of death sentence based on aggravating factors, need not be applied retroactively because the use of the beyond-a-reasonable-doubt standard in the context of judicial factfinding assured that accuracy would not be seriously diminished. *Schriro*[59].

But where, as here, facts resulting in a longer sentence are proved only by a preponderance, the reliability necessary to determine criminal guilt is constitutionally insufficient to allow any increase in the period of incarceration. *Winship*.[60]

### B. Contrary to the *Grier* Majority, the *Booker* remedial opinion did not make the U.S. Code sentence the *Apprendi-Blakely* statutory maximum

The *Grier* Majority, along with all the other courts of appeals, have concluded that the Court's remedial *Booker* opinion, by interpreting the Sentencing Reform Act so as to render

---

[55] 406 U.S. 404, 406.

[56] 399 U.S. 78, 86.

[57] 542 U.S. 348, 358.

[58] 536 U.S. 584.

[59] 542 U.S. at 356.

[60] 397 U.S. at 370.

the Guidelines advisory, had the necessary effect of making the U.S. Code sentence the *Apprendi-Blakely* statutory maximum – disputed facts in sentencing "no longer increase the maximum punishment to which the defendant is exposed, but . . . simply inform the judge's discretion as to the appropriate sentence." (App. 7a.) That conclusion is wrong for two reasons.

First, the *Booker* remedial opinion itself does not permit the U.S. Code sentence to be the maximum sentence in all cases. *Booker* requires that all sentences be subject to appellate reasonableness review.[61] That requirement, by definition, establishes a potential ceiling for sentences somewhere below the U.S. Code sentence: if appellate reasonableness review is to have any meaning, then there must be unreasonable sentences that are below the U.S. Code. If the *Grier* Majority were right, and the U.S. Code sentence were the true legal maximum, then sentencing judges would be wholly unrestrained in sentencing at or anywhere below the U.S. Code sentence, and appellate reasonableness review would be substantively meaningless, relegated to simply checking the sentence imposed against the U.S. Code provision. But such pro forma ministerial review cannot be what the *Booker* remedial opinion intended as reasonableness review.

Contrary to the Grier Majority and concurring opinions, sentencing judges do not have total discretion to sentence at or under the U.S. Code sentence. Rather, their discretion is cabined by the *Booker* requirement that they exercise discretion reasonably. That

[61] *Booker*, 543 U.S. at 261.

requirement, as Justice Alito has pointed out, "necessarily supposes that some sentences will be unreasonable in the absence of additional facts justifying them . . . Thus, although the post-*Booker* Guidelines are labeled "advisory," reasonableness review imposes a very real restraint on a judge's ability to sentence across the full statutory range without finding some aggravating fact." *Cunningham*.[62] And where – as here – such an aggravating fact establishes a separate offense that constitutes a sentence enhancement, *Apprendi-Blakely* requires that fact be found beyond a reasonable doubt.

Second, as Judge McKee's dissent discusses, the concern that Justice Scalia expressed in his *Booker* remedial dissent – whether "appellate review for 'unreasonableness' [will] preserve *de facto* mandatory Guidelines by discouraging district courts from sentencing outside Guidelines ranges"[63] – has become courtroom reality.

As in all the other circuits, sentencing judges in the Third Circuit are required, first, "to calculate a defendant's Guidelines sentence precisely as they would have before Booker." *United States v. Gunter* (3d Cir. 2006)[64]. Only after properly making that Guidelines sentence calculation is the sentencing judge permitted to consider whether to impose a sentence that varies from it. The reality, then, as District Judge Nancy Gertner has written, is that the courts of appeals insist that district court judges "'anchor' their decisions in the Guidelines

---

[62] 127 S. Ct. at 880 (Alito, J., dissenting).

[63] 543 U.S. at 313 (Scalia, J., dissenting in part).

[64] 462 F.3d 237, 247.

before considering anything else."[65] In that light, as well as in light of how courts of appeals attach varying levels of presumptive reasonableness to within-Guidelines sentences, referring to the Guidelines as truly "advisory" does not reflect courtroom reality – the Guidelines are just as essential to, and determinative of, a defendant's punishment as they were pre-*Booker* .[66]

That reality was well reflected in this case. Here, the District Court imposed a sentence based purely on the Guidelines calculation: the 84-105 sentencing range, elevated to 120-150 months after adding the four-level enhancement for finding that Grier committed aggravated assault. Significantly, the District Court ultimately imposed a sentence of 100 months not because of an exercise of discretion to sentence anywhere within the U.S. Code 120-month sentence, but because the court found that the victim was partially responsible, and so departed downward two levels, pursuant to U.S.S.G. § 5K2.10, lowering the sentencing range to 100-120 months. (App. 4a.) As Judge McKee's dissent observes, the record suggests that if the district court had not found Grier guilty of the crime of aggravated assault by a preponderance of the evidence, then the court would not have imposed as severe a sentence. (App. 56a.) To view this sentencing as anything different from a pre-*Booker* mandatory Guidelines sentencing is to deny the courtroom reality.

---

[65] Nancy Gertner, "What Yogi Berra Teaches About Post-*Booker* Sentencing," *The Pocket Part of Yale Law Journal* (http://www.yalelawjournal.org/archive.asp (July 3, 2006).)

[66] How this Court decides *Claiborne v. United States*, 127 S. Ct. 551(*cert. granted,* Nov. 3, 2006), and *Rita v. United States*, 127 S. Ct. 551 (*cert. granted*, Nov. 3, 2006), both of which relate to these issues, may well affect this analysis.

### C. Under the Doctrine of Constitutional Avoidance, this Court can construe the Federal Sentencing Statutes to require use of the beyond-a-reasonable-doubt standard to prove sentence enhancements that constitute a separate offense

To vindicate the due process rights of convicted defendants in sentencing, this Court can invoke the Doctrine of Constitutional Avoidance to interpret the Sentencing Reform Act to require use of the beyond-a-reasonable doubt standard to enhancements that constitute a new and separate offense. Here, although the Grier Majority recognized that statutory silence on burden of proof triggers application of the Doctrine (*see* App. 10-11a), the Majority nevertheless wrongly ruled it inapplicable.

The Doctrine of Constitutional Avoidance requires that, before addressing difficult constitutional questions arising out of statutory silence, the courts must attempt to construe the relevant statute to avoid the constitutional problem:

> The canon [of constitutional avoidance] is not a method of adjudicating constitutional questions by other means . . . . Indeed, one of the canon's chief justifications is that it allows courts to avoid the decision of constitutional questions. It is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.

*Clark v. Martinez* (U.S. 2005).[67]

A cardinal principle of statutory interpretation is that if there is a "serious doubt" as to a statute's constitutionality, the courts must "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Zadvydas v. Davis* (U.S.

[67] 543 U.S. 371, 381.

2001)[68] (*quoting Crowell v. Benson* (U.S. 1932)[69]). And "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Hooper v. California* (U.S. 1895).[70]

The standard of proof for enhancement facts is an open and serious constitutional question – as the split *Grier* decision establishes. And nothing in the Sentencing Reform Act or the Sentencing Guidelines addresses it. Although commentary to U.S.S.G. § 6A1.3, states that "use of a preponderance of the evidence standard is appropriate to meet due process requirements," Congress did not delegate adjudicating functions to the Commission. *See Booker*[71]. And Justice Thomas made clear in *Booker* that the commentary was mistaken:

> The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant.

*Booker*.[72] Further, as Justice Scalia noted, although the Guidelines may represent what the Sentencing Commission may suggest as "better sentencing practices . . . the Commission's view of what is 'better' is no longer authoritative, and district judges are free to disagree –

---

[68] 533 U.S. 678, 689.

[69] 285 U.S. 22, 62.

[70] 155 U.S. 648, 657.

[71] 543 U.S. at 243 (quoting *Mistretta v. United States*, 488 U.S. 361, 388 (1989)).

[72] 543 U.S. at 319 n.6.

as are appellate judges." *Booker*.[73]

In *Clark v. Martinez* (U.S. 2005), the Court instructed that the Doctrine of Constitutional Avoidance must be applied according to the "lowest common denominator," which under the federal Guidelines would mean requiring proof of penalty-elevating facts beyond a reasonable doubt:

> It is not at all unusual to give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation. The lowest common denominator, as it were, must govern. . . . In other words, when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail – whether or not those constitutional problems pertain to the particular litigant before the Court.[74]

Here, the lowest common denominator would include this Court's example in *Blakely*: "[A] judge could sentence a man for committing murder even if the jury convicted him only of illegally possessing the firearm used to commit it – or of making an illegal lane change while fleeing the death scene."[75]

Where, as here, "an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems." *I.N.S. v. St. Cyr*

---

[73] 543 U.S. at 306 n.4 (Scalia, J., dissenting in part.)

[74] 543 U.S. 371, 380-81.

[75] 542 U.S. at 306.

(U.S. 2001).[76] This Court should interpret the Sentencing Reform Act, as it did in the *Booker* remedial opinion, and require proof beyond a reasonable doubt of facts supporting sentence enhancements that constitute a separate offense.

[76] 533 U.S. 289, 299-300.

## CONCLUSION

WHEREFORE, Petitioner respectfully requests that the Court grant the petition for writ of certiorari.

Respectfully submitted,

JAMES V. WADE, ESQ.
Federal Public Defender

___________________________________
RONALD A. KRAUSS, ESQ.
*Counsel of record*
Asst. Federal Public Defender– Appeals
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
(717) 782-2237
PA Attorney ID # 47938
*Counsel for Petitioner,*
*Sean Grier*

Date: May 22, 2007

# CERTIFICATE OF BAR MEMBERSHIP

I, Ronald A. Krauss, Esq., Assistant Federal Public Defender– Appeals, hereby certify that I am a member of the Bar of this Court.

Respectfully submitted,

________________________________________
RONALD A. KRAUSS, ESQ.
Asst. Federal Public Defender–Appeals

Date: May 22, 2007

NO.__________

IN THE

# SUPREME COURT OF THE UNITED STATES

*OCTOBER TERM, 2006*

SEAN GRIER,
*Petitioner,*
v.
UNITED STATES OF AMERICA
*Respondent.*

## CERTIFICATE OF SERVICE

## MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

## AND

## PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

I, Ronald A. Krauss, Esq., a member of the Bar of this Court, hereby certify that on this 22nd day of May, 2007, copies of the Motion for Leave to Proceed *in Forma Pauperis* and the Petition for a Writ of Certiorari, with attached Appendices, in the

above-captioned case were mailed, first class postage prepaid, to the following:

PAUL CLEMENT, ESQ.
Solicitor General
United States Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530
(202) 514-2201

MARCIA M. WALDRON, CLERK
United States Court of Appeals
for the Third Circuit
601 Market Street, Room 21400
Philadelphia, PA 19106-1790
(215) 597-2995

THEODORE B. SMITH, III, ESQ.
United States Attorney's Office
Federal Building
228 Walnut Street
Harrisburg, PA 17108
(717) 221-4482

SEAN GRIER
Reg. No. 12085-067
FCI Allenwood (Low)
PO Box 1000
White Deer, PA 17887

I further certify that I am a member of the Bar of this Court and that all parties required to be served have been served.

Respectfully submitted,

___________________________________
RONALD A. KRAUSS, ESQ.
*Counsel of record*
Asst. Federal Public Defender–Appeals
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
(717) 782-2237
PA Attorney ID # 47938
*Counsel for Petitioner,*
*Sean Grier*

Date: May 22, 2007